MATTER OF P—R—

In DEPORTATION Proceedings

A-11445387

*Decided by Board March 13, 1962*

Expatriation—Evidence—Uncorroborated statements against interest, now recanted, not sufficient proof in proceedings commenced prior to September 26, 1961.

(1) Respondent's uncorroborated admissions against interest concerning voting in a foreign election, which he now denies, fail to satisfy the government's heavy burden of establishing expatriation by "clear, unequivocal, and convincing evidence" in proceedings commenced in January 1959 (*Gonzalez-Jasso v. Rogers*, 264 F.2d 584 (C.A. D.C., 1959)).

(2) By its own terms, section 349(c) of the Act, providing that the one raising the defense that nationality was lost involuntarily has the burden of establishing such defense, is limited to proceedings commenced on or after its enactment on September 26, 1961.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable as immigrant without visa.

## BEFORE THE BOARD

DISCUSSION: Respondent, a 50-year-old married male, was born in the United States. On May 16, 1949, a board of special inquiry found that the respondent had lost his United States citizenship on January 13, 1941, as result of employment as a carpenter and handy man with an agency of the Government of Mexico under section 401(d) of the Nationality Act of 1940, and that if he had not so lost, that he had become expatriated on July 7, 1946, under section 401(e) of the Nationality Act of 1940 by voluntarily voting in a presidential election in Mexico on that date. The respondent who was returning to the United States after a short visit to Mexico was excluded at that time. Respondent reentered the United States in September 1951 as an agricultural laborer. On January 15, 1959, an order to show cause was served upon the respondent charging him with having been excludable at the time of his last entry as an immigrant without a visa. The special inquiry officer concluded that the respondent had lost United States nationality either by employ-

578

ment with the Mexican Government after January 13, 1941 until 1948, or that if he had not lost for this reason, he had become expatriated by voting in Mexico on July 7, 1946 in a presidential election. At the hearing before the board of special inquiry the respondent stated that he had voted for President Aleman on July 7, 1946, and had voted in presidential elections on two other occasions. However, at a deportation hearing held on March 17, 1959, respondent denied that he had voted for Aleman on any occasion. He testified that he had voted for Cardenas in a year he could not recall, and that had been the only time he voted.

Upon appeal to the Board, proceedings were reopened. The Board pointed out that the burden is upon the Government to prove an act of expatriation and it must do so by proof that does not leave the issue with doubt; that the record did not establish definitely that only persons of Mexican nationality were employed in the work respondent did for the Mexican Government; and that since the testimony concerning voting in Mexico was in conflict, some corroborating evidence should be obtained if possible.

At the reopened hearing, the Service withdrew it charge that respondent had become expatriated by reason of his employment. Respondent testified that he had voted in 1934 for Cardenas and for one of the candidates at two subsequent elections, and that he testified as he did on March 17, 1959, about voting only for Cardenas because he had forgotten the other occasions. On December 16, 1959, the special inquiry officer found respondent had not lost citizenship by reason of his employment but that he had lost citizenship by reason of voting in the presidential election in Mexico on July 7, 1946. (Voting prior to January 13, 1940, did not cause expatriation.) On April 21, 1960, the Board affirmed the decision of the special inquiry officer. Respondent, alleging that he had not voted in 1946, sought judicial review. Counsel alleges that the District Attorney, upon advice from the Department of Justice, procured dismissal of the suit on the ground that a motion to the Board for reopening on the basis of the newly discovered evidence (denial of voting in 1946) would be the proper remedy. On June 27, 1961, the respondent executed an affidavit denying that he had voted in any election in Mexico, and moved for reopening on the basis of the affidavit. On October 19, 1961, the Board ordered proceedings reopened.

Reopened hearing was held on November 16, 1961. Respondent testified he had not voted in Mexico; that he had in previous hearings testified to the contrary, because he thought he would "be in good standing" in so testifying; and that he had been motivated to so testify because the United States and Mexico were allied and he thought he would be punished by the United States if he said that

579

he had not voted in Mexico. He stated that since he now saw the position his false testimony had placed him in, he wished to correct the record. He testified he was fearful at the other hearings and did not understand what was being done. On December 28, 1961, the special inquiry officer entered an order stating that the uncorroborated admissions against interest made by the respondent concerning voting in a foreign election, which he now denied, failed to satisfy the Government's heavy burden requiring it to establish expatriation by "clear, unequivocal, and convincing evidence." The special inquiry officer relied upon *Gonzalez-Jasso* v. *Rogers*, 264 F.2d 584 (C.A. D.C., 1959).

The special inquiry officer explored the effect of section 349(c) of the Act, 8 U.S.C. 1481(c), which provides that the one raising the defense that nationality was lost involuntarily has the burden of establishing such defense. Section 349(c) of the Act provides that the force of the section would be applicable "in any action or proceeding commenced on or after the enactment" of section 349(c) of the Act. The section became law on September 26, 1961. The special inquiry officer concluded that since the instant proceedings were commenced in January 1959 by the issuance of the order to show cause, the case must be decided under the rule of evidence set out in *Gonzalez-Jasso* v. *Rogers*, *supra*. We find that the special inquiry officer's termination of proceedings and analysis of section 349(c) of the Act are proper.

ORDER: It is ordered that no change be made in the order of the special inquiry officer terminating proceedings.